COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Bray and Bumgardner
Argued at Salem, Virginia


JASON JEROME WATLINGTON
                                    MEMORANDUM OPINION* BY
v.    Record No. 2332-99-3          JUDGE RICHARD S. BRAY
                                       NOVEMBER 7, 2000
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
                        James F. Ingram, Judge

             Elwood Earl Sanders, Jr., Appellate Defender
             (Public Defender Commission, on briefs),
             for appellant.

             Donald E. Jeffrey, III, Assistant Attorney
             General (Mark L. Earley, Attorney General;
             Leah A. Darron, Assistant Attorney General,
             on brief), for appellee.


     Jason Jerome Watlington (defendant) was convicted in a

bench trial of one count of statutory burglary and two counts of

grand larceny.  On appeal, defendant complains the trial judge

erroneously overruled a "hearsay objection" to testimony that

his name and telephone number were displayed on a "caller ID

box."  Finding no error, we affirm the convictions.

     The parties are fully conversant with the record, and this

memorandum opinion recites only those facts necessary to a

disposition of the appeal.

---

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

I.

While John Messick and his family were vacationing, someone burglarized their residence. Significant property was taken from the home, including a truck owned by Messick's business. When the truck was found abandoned in North Carolina, stolen articles, together with a "camouflage hat" with "Kim W. written . . . inside," which Messick was unable to identify, were recovered from the vehicle. Over defendant's hearsay objection, Messick was permitted to testify that a "caller ID box," installed in his home, had reported a telephone call at 3:48 a.m. the morning of the burglary from a "Watlington" and a telephone number.

Cyril Kramer, Messick's father-in-law, obtained the telephone number from the device and entered it into a computer system that stored names and telephone numbers of customers at Messick's pizza restaurants, seeking a match. Defendant also objected to this testimony, challenging the "reliability or credibility" of Kramer's information and "the system," and, again, asserting "hearsay." Overruling the objection, the trial judge permitted the witness to relate "what he did," and Kramer testified that the computer connected an address on Clement Street and the name "Watlington" to the telephone number. The ensuing police investigation confirmed defendant resided on Clement Street.

-

The investigation further disclosed that a basement window at the Messick home had been broken, removed from the sash and placed against an exterior wall.  Five latent fingerprints were obtained from the window, all belonging to defendant.  However, no fingerprints were recovered from the truck because it "had been wiped clean."  Defendant was familiar with the Messick home and, while denying ownership of the hat, acknowledged an acquaintance with a Kim Whitcher.

                                II.

Defendant first assigns error to the admission into evidence of "the results of a caller ID box with a last name of Watlington over a hearsay objection without the showing of reliability required by Virginia law."

"'Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter.'"  Tatum v. Commonwealth, 17 Va. App. 585, 588, 440 S.E.2d 133, 135 (1994) (quoting McCormick on Evidence § 246, at 584 (2d ed. 1972)).  In Tatum, we concluded that caller ID evidence is not hearsay because "there is no 'out-of-court asserter,' because the caller ID display is based on computer generated information and not simply the repetition of prior recorded human input or observation."  Id.

                                -

Accordingly, guided by Tatum, we find that the caller ID evidence in issue is not hearsay.

"An objection made at trial on one ground does not preserve for appeal a contention on a different ground." Clark v. Commonwealth, 30 Va. App. 406, 411, 517 S.E.2d 260, 262 (1999). Defendant's hearsay objection to the ID evidence voiced during trial and reliability argument presented on appeal raise substantially different issues. Thus, we will not consider defendant's appellate argument challenging the reliability of the caller ID data. See Luck v. Commonwealth, 30 Va. App. 36, 49 n.1, 515 S.E.2d 325, 331 n.1 (1999); see also Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling . . . ."). "A contrary rule would 'deny the trial court the opportunity to consider and weigh, and, if necessary, reconsider before finally ruling.'" Taylor v. Taylor, 27 Va. App. 209, 218 n.1, 497 S.E.2d 916, 920 n.1 (1998) (citation omitted).

Defendant next objected to Kramer's testimony relating information obtained from the restaurant computer based upon the caller ID report, which, arguably, again placed the caller ID evidence in issue. On this occasion, defendant mentioned reliability in articulating his objection. Assuming, without deciding, that defendant was then referencing the caller ID

-

device, rather than the computer system, his argument is without merit.

In overruling the objection, the trial court expressly admitted the testimony solely to explain "what [Kramer] did." A judge is presumed to consider evidence only for the purpose for which it was admitted. Eckhart v. Commonwealth, 222 Va. 213, 216, 279 S.E.2d 155, 157 (1981). This presumption controls "'absent clear evidence to the contrary.'" Cole v. Commonwealth, 16 Va. App. 113, 116, 428 S.E.2d 303, 305 (1993) (quoting Hall v. Commonwealth, 14 Va. App. 892, 902, 421 S.E.2d 455, 462 (1992) (en banc)). The instant record does not suggest the court considered the disputed testimony for any purpose beyond the limitations of the ruling. To the contrary, the court, in denying defendant's motion to strike, recounted the persuasive evidence for the record, without mention of the computer data.

Accordingly, we affirm the convictions.

Affirmed.

-

Benton, J., dissenting.

The Commonwealth argues that Watlington's objections concerning hearsay and the reliability of the caller identification evidence are procedurally defaulted. Specifically, the Commonwealth asserts that the argument concerning the reliability of the caller identification device "was never made in the trial court and is, in any event, without merit." The majority holds that Watlington's claim of reliability is procedurally barred because his objections were inadequate to preserve the issue for appeal. I disagree.

I.

It is well established that the primary purpose of requiring a timely and specific objection is to "'provide the trial [judge] with the opportunity to remedy any error so that an appeal is not necessary.'" McLean v. Commonwealth, 30 Va. App. 322, 331, 516 S.E.2d 717, 721 (1999) (citation omitted). When the trial judge has an opportunity to rule on the merits of the issue, the matter has been properly preserved for appeal. See Campbell v. Commonwealth, 12 Va. App. 476, 480, 405 S.E.2d 1, 2 (1991) (en banc) (holding that an issue is properly preserved for appeal when "the trial [judge] was adequately advised of the defendant's position, . . . consider[ed] the issue raised, and . . . had the opportunity to take corrective action").

-

When Watlington's counsel objected to John Messick's testimony concerning the identification device, the following colloquy occurred between the attorneys and the trial judge:

> [DEFENSE COUNSEL]: Your Honor, I am going to object to this because he's testifying to, I guess, a machine that we can't cross-examine in this Courtroom, and we don't know the accuracy of that testimony. I think it would be hearsay if it is out of Court testimony offered for the truth of the matter asserted.
>
> [COMMONWEALTH'S ATTORNEY]: Judge, caller ID boxes are common devices that millions of Americans have on their phones. They rely upon them to identify the identity of callers and they are commonly accepted pieces of technology, and I don't think it is hearsay. I think it is something that he can testify to.
>
> THE COURT: I think he can testify to and you can cross examine him.
>
> *    *    *    *    *    *    *
>
> [COMMONWEALTH'S ATTORNEY]: All right. What did the caller ID box show?
>
> [MESSICK]: It showed that a call had come in at 3:48 A.M. on the morning of the 28th, and it displayed the phone number and the last name, Watlington.

Clearly, the trial judge had the opportunity to rule on the issue whether Messick's testimony concerning the identification device was hearsay.

In Penny v. Commonwealth, 6 Va. App. 494, 370 S.E.2d 314 (1988), we did not rule that testimony concerning a computer display was not hearsay. The contention was made by Penny that

-

the trial judge "erred in admitting the telephone company records without the proper foundation." Id. at 496, 370 S.E.2d at 316. In response, the Commonwealth argued that the records were admissible as an exception to the hearsay rule. See id. at 496-98, 370 S.E.2d at 315-17. We merely said "we do not believe that the admissibility [of computer-generated displays] . . . should be resolved solely by resort to traditional hearsay analysis." Id. at 497, 370 S.E.2d at 316 (emphasis added). In response to the parties' arguments, we held "that the call trap results may be admitted only after the particular device in question has been proven reliable." Id. at 499, 370 S.E.2d at 317.

Traditionally, "[i]n determining the admissibility of computer records, when the argument has been advanced that they are inadmissible hearsay, [Virginia courts] have employed the . . . business records exception to the hearsay rule." Kettler & Scott, Inc. v. Earth Technology Cos., 248 Va. 450, 457, 449 S.E.2d 782, 785 (1994); see also Simpson v. Commonwealth, 227 Va. 557, 566-67, 318 S.E.2d 386, 392 (1984) (holding that testimony concerning a taxi's meter display was admissible as a business records exception to the hearsay rule); Fitzhugh v. Commonwealth, 20 Va. App. 275, 280, 456 S.E.2d 163, 165 (1995) (quoting Kettler & Scott, Inc.). See generally Randy Snyder, Note, Assuring the Competency of Computer-Generated Evidence, 9 Computer L.J. 103, 104 (1989) (noting that "[i]t is unlikely

-

that computer-generated evidence will be offered into evidence for some purpose other than 'to prove the truth of a matter asserted,' and thus is hearsay").  I agree, however, that in Tatum v. Commonwealth, 17 Va. App. 585, 440 S.E.2d 133 (1994), we held that testimony about a caller identification display was not hearsay.  Broadly reading our prior holding, we said "the Penny analysis" dictates that a hearsay objection is not the proper basis for challenging the admissibility of a homeowner's testimony of the display generated on a telephone caller ID box. See id. at 588, 440 S.E.2d at 135.  Thus, the trial judge's ruling, which overruled Watlington's first hearsay objection, was consistent with our precedent in Tatum.

In Penny, however, we also made a connection between the issues of reliability and accuracy.  We expressly noted that "the reliability of the results [of the device] . . . depend[s] on the accuracy of the call trap device."  6 Va. App. at 498, 370 S.E.2d at 317.  Thus, I would hold that Watlington's objection concerning "accuracy" and the prosecutor's response to that objection sufficiently put before the trial judge the issue of the reliability of the device.  See McLean, 30 Va. App. at 331, 516 S.E.2d at 721; Campbell, 12 Va. App. at 480, 405 S.E.2d at 2.

II.

When Cyril Kramer began to testify concerning the display on the computer used by his son-in-law's pizza restaurants, the

-

following colloquy occurred between defense counsel and the
trial judge:

> [DEFENSE COUNSEL]:  Your Honor, I am going
> to object to this testimony.
>
> [TRIAL JUDGE]:  On what grounds?
>
> [DEFENSE COUNSEL]:  I am going to object
> . . . first of all, he is  saying that . . .
> Messick gave him a telephone number and
> . . . Messick never testified as to what
> telephone number he wrote off of his caller
> ID.  And based on . . . Kramer's testimony,
> we don't know how accurate this telephone
> number is or whether . . . Kramer, himself,
> looked at the caller ID and wrote down this
> telephone number . . .  that he put in the
> system that we have no way of examining or
> know nothing about to go on the reliability
> or credibility of this system that he
> utilized and tried to identify an address.
>
>       *    *    *    *    *    *    *
>
> THE COURT:  I think he can testify to what
> he did.

I would hold that this objection was sufficient to preserve
Watlington's objection to the reliability of the device.

Moreover, by allowing Kramer "to testify to what he did,"
the trial judge improperly permitted the prosecutor to establish
facts about the operation of the device without the prerequisite
proof that the device was reliable.  Kramer was permitted to
testify as follows:

> Q.  All right.  What did you do with it?
>
> A.  Okay.  The phone number was on the
> caller ID.  I looked at the phone number and
> I took the phone number down.  I went to the
> computer in the office, okay, I dial up the

-

store, which is the NorDan store and we can access to any part of the computer in the NorDan store from the office. I went to the order entry part of the program and put the phone number in. Okay, and then it brings up the address on Clement and the [Watlington] name on that because the reason it would bring it up is because a previous order had been placed at that phone number, at that address, and we would keep that in our data base.

Q. Okay. And what was the address, the name and the address that the phone number came back to?

A. The name was [Watlington] and the street was Clement. I don't remember the street number.

### III.

We have previously held that when the prosecutor seeks to admit in evidence the results of a computer-generated telephone device, the evidence must establish that the equipment is reliable. See Tatum, 17 Va. App. at 588-89, 440 S.E.2d at 136; Penny, 6 Va. App. at 499, 370 S.E.2d at 317. In Penny, the prosecutor sought to introduce the evidence of a computer-generated "call trap" record. The prosecutor introduced no evidence, however, that the particular trap placed on the victim's telephone "accurately traced" calls made to that telephone. 6 Va. App. at 500, 370 S.E.2d at 317. We held that computer-generated call trap identification is the result of technological or scientific procedures and, therefore, the results may be admitted only after the particular device is proven reliable. Id. at 498-99, 370 S.E.2d at 316-17. Cf.

-

Dance v. Commonwealth, 32 Va. App. 466, 474-75, 528 S.E.2d 723, 727-28 (2000) (noting that the reliability of the computer operated "call trace" system was established by the testimony of a technician who helped design the system and train people in its use); Tatum, 17 Va. App. at 588-90, 440 S.E.2d at 135-36 (noting that the testimony of the homeowner may be sufficient to establish the reliability of a telephone caller identification device).

The evidence in this record established that the identification devices displayed computer-generated information. The witness was permitted to testify concerning that information. The evidence failed to establish, however, the reliability, the accuracy, or the proper functioning of the devices.

The information gleened from the identification devices was an important piece of evidence supporting these convictions. Significantly, the prosecutor included the following references to this evidence in his closing argument:

> With reference to the phone call, the significance of this phone call is that it was made at 3:48 A.M. on the morning of June 28th during that twenty-four hour window when the burglary could have occurred. And it doesn't stretch one's imagination to conclude that he undoubtedly made this call to the home to find out if anybody was there so he could then come over and burglarize it.

-

After hearing this and other arguments of counsel, the trial judge made no specific findings.  We can only conclude that this evidence as recited by the prosecutor was persuasive to the trial judge when he ruled as follows in convicting Watlington:

> Have the defendant stand.  (Defendant stands).  Jason Jerome Watlington, based on the evidence the Court has heard in this case, the Court finds you guilty of statutory burglary as charged in Indictment #1, and guilty of grand larceny as charged in Indictments 2 and 3.

For these reasons, I would hold that the evidence was improperly admitted and relied upon to support the convictions.  I would reverse the convictions and remand for a new trial.

I dissent.